# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
        Plaintiff,

v.                                               **Case No. 14-CR-78**

**ROOSEVELT LEE**
        **Defendant.**

## STATEMENT OF REASON MEMORANDUM

The government charged defendant Roosevelt Lee with conspiracy to distribute controlled substances and related offenses. He pleaded guilty to possession of cocaine with intent to distribute, contrary to 21 U.S.C. § 841(a)(1) & (b)(1)(C), and I set the case for sentencing. In imposing sentence, a district judge must first determine the defendant's imprisonment range under the guidelines, then make an individualized assessment of the appropriate sentence based on the factors set forth in 18 U.S.C. § 3553(a). E.g., United States v. Kappes, 782 F.3d 828, 837 (7th Cir. 2015).

## I. GUIDELINE CALCULATION

Defendant's pre-sentence report ("PSR") set a base offense level of 32 based on a drug weight of 15-50 kilograms of cocaine, U.S.S.G. § 2D1.1(c)(4); added 2 levels under U.S.S.G. § 2D1.1(b)(1) based on the discovery of a firearm during the search of a residence connected to the conspiracy; then subtracted 3 levels for acceptance of responsibility, U.S.S.G. § 3E1.1, for a final level of 31. The PSR further determined that defendant qualified as a career offender based on two prior drug trafficking convictions, resulting in a criminal history category of VI. See U.S.S.G. § 4B1.1.

Defendant objected to the PSR's drug weight determination, arguing that he should not be held responsible for relevant conduct of 15 to 50 kilograms of cocaine because he was in prison during significant portions of the conspiracy. He further indicated that the house where police found the gun was not his home, and that the gun belonged to a co-actor.

I found it unnecessary to resolve these objections. Even if I had adopted a lower base offense level under § 2D1.1(c) and declined to impose the 2 level enhancement under § 2D1.1(b)(1), the guideline range would not have changed much, as the career offender provision and its base level of 32 would have kicked in. Whether the range was 188-235 months or 151-188 months, the sentence imposed under § 3553(a) would have been the same. See United States v. Minhas, 850 F.3d 873, 880 (7th Cir. 2017).

## II. SECTION 3553(a)

**A.     Sentencing Factors**

Section 3553(a) directs the court to consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the [advisory sentencing guideline range;]

(5) any pertinent policy statement . . . issued by the Sentencing Commission[;]

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The court must, after considering these factors, impose a sentence "sufficient but not greater than necessary" to satisfy the purposes of sentencing: just punishment, deterrence, protection of the public, and rehabilitation of the defendant. Id. In determining a sufficient sentence, the district court may not presume that a guideline term would be proper. E.g., United States v. Coleman, 763 F.3d 706, 708 (7th Cir. 2014). Rather, after calculating the advisory range so that it "can derive whatever insight the guidelines have to offer, [the district court] must sentence based on 18 U.S.C. § 3553(a) without any thumb on the scale favoring a guideline sentence." United States v. Sachsenmaier, 491 F.3d 680, 685 (7th Cir. 2007).

**B.    Analysis**

    **1.    The Offense**

This prosecution arose out of the government's investigation of a racketeering enterprise headed by Kevin R. Arms, which was involved in drug trafficking, money laundering, and acts of violence. This defendant engaged in drug trafficking with other associates of the enterprise. The evidence against him consisted primarily of the results of two searches and statements from sources of information.

On March 5, 2012, agents conducted a consent search at a residence in Milwaukee. A co-conspirator was located inside the home, while defendant was found hiding in the

3

common hallway.  In the basement of the residence, agents located a 9mm handgun next to clear plastic bags containing 13.86 grams of crack cocaine.  Subsequent analysis revealed the co-conspirator's fingerprint on one of the clear plastic bags.

On March 28, 2013, agents executed a search warrant at a residence in Milwaukee. Inside the home, they located a diaper that contained 109 grams of powder cocaine, a Pyrex cup with what appeared to be cocaine residue, digital scales, plastic bags, and a razor blade with residue.  Along with these items, agents further located boxes of baking soda, known to be used in the preparation of crack cocaine, which upon subsequent analysis revealed defendant's fingerprint.[1]

A number of sources further discussed defendant's involvement with Arms.  One source indicated that Arms supplied defendant with one kilogram of cocaine from every delivery Arms received.  Another stated that in July 2012 defendant received 9 ounces of cocaine from Arms. A third reported that in 2012 he observed Arms supply defendant with several ounces of cocaine.

Defendant told the PSR writer that his motivation for committing the offense was financial.  Defendant stated that he approached Arms, a childhood friend, to buy drugs to sell because he needed money.  He denied ever working a legitimate job.  He estimated that he received approximately $50,000 from his involvement in the offense and all the money was gone; he spent it on jewelry, women, alcohol, and cars.  He was living an expensive lifestyle but lost everything.

---

[1] The count of conviction was based on the drugs found during this search.

### 2. The Defendant

Defendant reported a good childhood, in a two parent home. However, at age 13 he started stealing from the corner store, began hanging around with negative peers, then escalated to stealing cars. Crime became a way of life, and he compiled a substantial adult record, including convictions for recklessly endangering safety in 1992, felon in possession of a firearm in 1994, drug possession in 1998, resisting/obstructing in 2000 and in 2003, heroin delivery in 2006, and possession with intent to distribute marijuana in 2011. Defendant's state supervision in the heroin case was revoked in 2013 based on the instant offense conduct, leading to a 13 month sentence.

Released from state prison in January 2014, defendant enrolled in a painting, drywall, and carpentry program, which he completed in March 2014, testing out of the program at the top of the class and never missing a session. Defendant was arrested on the instant indictment in April 2014 and remained in custody until May 2015, when he was released on bond. Following his release, he obtained legitimate employment for the first time in his life, holding the job until February 2017, when he was laid off. He admitted previously supporting himself by dealing drugs. At that time of sentencing, he was caring for his elderly parents. His father suffered from dementia and his mother various orthopedic issues. His mother indicated that he had changed; he did not leave the house and took care of her and his father. The PSR reported past use of marijuana and cocaine, but all of his screens since September 2015 had been negative.

### 3. The Sentence

This was a serious offense, as the Arms enterprise distributed a substantial amount of

cocaine from 2007 to 2014. However, defendant was imprisoned for significant periods of time during the course of the enterprise.[2] Further, while the police found a gun during the March 2012 search, the record contained no evidence that defendant personally used or carried a firearm in connection with the offense or that he otherwise engaged in acts of violence. In considering what was needed to provide just punishment, I also noted the time defendant had already served related to this conduct, first with the state, where he received a revocation sentence of 1 year and 20 days in 2013, and then the roughly 13 months he spent in federal pre-trial detention.

In considering the need for protection of the public and deterrence, I could not overlook defendant's significant prior record, which resulted in his classification as a career offender, and his poor past performance on supervision. However, what seemed even more significant was the manner in which he had conducted himself since his release from state prison in early 2014. He was not out very long before his arrest on this indictment (based on conduct that preceded his release), although he did complete the construction training program in March 2014. Then, after his detention in this case from April 2014 to May 2015, he had done quite well on bond, testing negative for drugs since September 2015, finding legitimate work for the first time in his life, and caring for his elderly parents. At age 43, it appeared that he was finally ready to turn things around and move forward with a pro-social life. This is the kind of progress a court should be reluctant to interrupt.

---

[2]Defendant was imprisoned from August 2006 to June 2009 on the state heroin case; from October 2010 to November 2011 on a revocation sentence in the heroin case and a new sentence in the 2011 marijuana case; from March 2012 to June 2012 on a 90-day state sanction imposed after his March 2012 arrest; and from April 2013 to January 2014 based on another revocation sentence in the heroin case.

6

For these reasons, despite the guidelines' recommendation of significant additional prison, I found the period of time defendant had served related this conduct, about 26 months, a sufficient sanction. I found a period of supervision with strict conditions sufficient to protect the public and to deter.[3]

### III. CONCLUSION

Therefore, I committed defendant to the custody of the Bureau of Prisons for a period of time served, followed by three years of supervised release, the conditions of which appear in the judgment.

Dated at Milwaukee, Wisconsin, this 9th day of May, 2017

/s Lynn Adelman
LYNN ADELMAN
District Judge

---

[3]This sentence was based on § 3553(a) and would have been the same regardless of the guidelines and the objections.